## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

---

ARMON NAHAL,                                   Case No. 18-cv-631-DWF-KMM

                        Plaintiff,
                                               **REPORT &**
v.                                             **RECOMMENDATION**

ALLINA HEALTH SYSTEM,

                        Defendant.

---

This matter is before the Court on defendant Allina Health System ("Allina")'s motion for summary judgment. (ECF No. 98.) The plaintiff Armon Nahal opposes Allina's motion. After careful consideration, the Court recommends that Allina's motion be GRANTED and Mr. Nahal's complaint be DISMISSED.

## I.    FACTS

Mr. Nahal brings this lawsuit under Title VII, the Minnesota Human Rights Act ("MHRA"), the Minneapolis Civil Rights Ordinance ("MCRO"), and the Americans With Disabilities Act ("ADA"). He claims that his former employer, Allina, terminated him after a long history of discrimination and retaliation based on his membership in a number of protected classes: his Iranian nationality, his Muslim religion, his homosexuality, and his ADHD.

### A.    Allegations Within the Complaint[1]

Mr. Nahal began working for Allina in 2005 as a pharmacist at Abbot Northwestern Hospital in Minneapolis, Minnesota. (Second Am. Compl. ("SAC") ¶ 6.) He alleges that Allina learned of his homosexuality, Iranian background, Muslim religion, and ADHD within the first year of him employment. (*Id.* ¶¶ 8–11.) In 2008, Allina terminated Mr. Nahal's employment for the first time. (*Id.* ¶¶ 12, 14.) He

---

[1] This description of Mr. Nahal's claims is introductory and not intended to reflect the Court's proposed findings for purposes of this Report and Recommendation.

alleges it was "because of his same-sex orientation, his Iranian and/or Muslim heritage, or his ADHD condition." (*Id.*)  However, Mr. Nahal was a member of the Service Employees International Union, Local 113.  (*Id.* ¶ 13.)  He grieved his termination through the Union's process and was reinstated.  (*Id.* ¶¶ 14–15.)

After this first termination and reinstatement, Mr. Nahal alleges that he was the victim of harassment and discrimination by Allina.  For example, he alleges that he regularly requested additional training but was denied such an opportunity by Allina. (*Id.* ¶ 17.)  Mr. Nahal asserts that other employees were provided the requested trainings, and that the training could have led to an increase in pay or other job opportunities.  (*Id.*)  He further alleges that he was denied placement on a sub-specialty group he wished to join, the Critical Care Team.  (*Id.* ¶¶ 18–20.)

Mr. Nahal describes one incident of name-calling by the union steward, Rabih Nahas, which occurred after Mr. Nahal disclosed his ADHD diagnosis to Mr. Nahas. (*Id.* ¶ 33(d).)  Mr. Nahal alleges that Mr. Nahas told him in 2014, "You're just another meth addict gay guy." (*Id.* ¶ 22.)  Mr. Nahal alleges that other employees made complaints against him, but that Allina never revealed the identity of the complainants or provided Mr. Nahal a chance to respond to the complaints.  (*Id.* ¶ 27.)

From 2008 until his final termination in 2016, Mr. Nahal alleges that Allina required his presence at multiple meetings with little to no prior notice.  (*Id.* ¶ 23.)  He alleges that he often was only informed of the meeting 30 minutes before the start of his shift, and that other pharmacy employees were not required to attend these meetings.  (*Id.*)  Mr. Nahal further asserts that at one of these meetings in the spring of 2015, the union steward Mr. Nahas "screamed at" Mr. Nahal, telling him "Can't you see Armon?!?! They are just setting you up to fire you!" (*Id.* ¶ 26.)  Mr. Nahal alleges that the stress of these meetings and other demands made by Allina resulted in him suffering a seizure in August 2014, which caused him to collapse and hit his head. (*Id.* ¶ 24.)  He was hospitalized for two days as a result.  (*Id.* ¶ 25.)

Finally, Mr. Nahal alleges that Allina regularly issued oral and written warnings to him for tardiness, despite him having arrived by the start time previously agreed to by Allina.  (*Id.* ¶ 29.)  He alleges that at least one coworker was also tardy but did not receive the same warnings that he did.  (*Id.* ¶ 30.)  And he asserts that another coworker was asked to author a written warning to Mr. Nahal, though the coworker did not believe Mr. Nahal's conduct required such a warning.  (*Id.* ¶ 31.)  Mr. Nahal

alleges that Allina's conduct caused him "considerable emotion duress," and seeks considerable money damages as compensation.  (*Id.* ¶¶ 33, Prayer for Relief ¶ 1.)

### B.    Motion for Summary Judgment

Defendant Allina argues that its motion for summary judgment should be granted for several reasons.  First, it asserts that Mr. Nahal's Minnesota Human Rights Act claim must be dismissed because it is untimely.  Second, it argues that Mr. Nahal's Minneapolis Civil Rights Ordinance claim is improperly before the Court because Mr. Nahal has not met certain statutory prerequisites.  Third, Allina contends that Mr. Nahal's discrimination claims under Title VII are without merit because he has offered no evidence to support a finding of discrimination, he has admitted that his termination was not due to his protected class status, and he has failed to establish that Allina's proffered reason for terminating him was pretextual.  Finally, Allina argues that Mr. Nahal's ADA claims should be dismissed because they are time-barred and because Allina had no duty to provide the accommodations Mr. Nahal requested.

Mr. Nahal has not provided a formal brief in response, but instead submitted a number of exhibits and informal statements of facts.  Though they were filed late, counsel for Allina has indicated that it does not object to the Court considering these.

## II.    ANALYSIS

Summary judgment is appropriate when, drawing all reasonable inferences in favor of the nonmoving party, the record shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).  The moving party must demonstrate the absence of any genuine issue of material fact.  *Celotex*, 477 U.S. at 322.  When the moving party properly supports a motion for summary judgment, the nonmoving party must present admissible evidence showing that specific facts exist creating a genuine issue for trial.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986); *Wingate Cnty. Sch. Dist., No. 34*, 528 F.3d 1074, 1078–79 (8th Cir. 2008).  Conclusory allegations or denials are not enough to defeat summary judgment. *Id.*  Any reasonable inference made from the record must be made in favor of the nonmoving party.  *Durand v. Fairview Health Servs.*, 230 F. Supp. 3d 959, 964 (D. Minn. 2017).  Additionally, because Mr. Nahal is proceeding *pro se*, the Court construes his submissions liberally.  However, even against this lenient framework, the Court finds that Mr. Nahal's claims do not survive summary judgment.

### A.    Minnesota Human Rights Act Claims

Allina contends that Mr. Nahal's MHRA claims must be dismissed because they are untimely.  The Court agrees.  The MHRA provides that "a person may bring a civil action…within 45 days after receipt of notice that the commissioner has dismissed a charge…."  Minn. Stat. § 363A.33, subd. 1.  For the purposes of this provision, "receipt of notice" is considered to be five days from the date of service by mail of the written notice.  *Id.*  Here, Mr. Nahal brought two separate charges to the Minnesota Department of Human Rights ("MDHR"): the first was dismissed on August 26, 2015 (Clayton Decl. Ex. 41 at ¶ 20), the second on June 23, 2017.  (Nahal Dep. at 260:21–262:7; Clayton Decl. Ex. 28.)  "Receipt of notice," which started the 45 days Mr. Nahal would have had to file a civil action regarding the second dismissal, was June 28, 2017, five days from the date of the dismissal.  Forty-five days from that date is August 12, 2017.  However, Mr. Nahal did not file this action until March 6, 2018, and did not serve Allina until October 2, 2018.  (ECF Nos. 1, 71.)

According to Federal Rule of Civil Procedure 3, "[a] civil action is commenced by filing a complaint with the court."  However, in Minnesota, a "civil action is commenced against each defendant…when the summons is served upon that defendant…."  Minn. R. Civ. P. 3.01(a).  In this case, the Court need not engage in a choice of laws analysis to determine when Mr. Nahal's action was commenced for the purposes of the MHRA, because regardless of the date chosen—the filing date or the date of service—the action is untimely.[2]  Mr. Nahal has made no argument that equitable tolling or waiver should apply.  *See Evans v. T.W. Servs., Inc. of Delaware*, 930 F.2d 612, 614–15 (8th Cir. 1991).  Therefore, dismissal of his claims under the MHRA is appropriate.  *E.g.*, *id.*; *Cardoso v. Board of Regents of the Univ. of Minn.*, 205 F. Supp. 3d 1046, 1050 (D. Minn. 2016).

### B.    Minneapolis Civil Rights Ordinance Claims

Much like the MHRA claims, Allina contends that Mr. Nahal's MCRO claims must be dismissed for failure to meet certain statutory requirements.  Once again, the Court agrees.  The MCRO provides a complaint procedure for individuals who have been harmed by defined acts of discrimination within the city of Minneapolis.  MCRO

---

[2] Courts have determined that in circumstances such as these, Minnesota procedural law applies. *See, e.g.*, *Johnson v. Carroll*, 658 F.3d 819, 828–29 (8th Cir. 2011); *Cardoso* at 1050

Chs. 139.10, 139.40. This procedure requires the filing of an administrative charge within one year of the event giving rise to the complaint with the Minneapolis Commission on Civil Rights ("MCCR"). MCRO Ch. 141.50(a). The MCRO also provides a civil cause of action, which can only be brought within 45 days of a dismissal of the complaint, or determination of no probable cause by the MCCR, or within 90 days of providing notice to the MCCR of a complainant's intent to bring a civil action regarding a pending claim. MCRO Ch. 141.60(a). Minnesota courts have found that a potential plaintiff in a MCRO action must first exhaust their administrative remedies before bringing such a lawsuit. *Overseas Commodities Corp. v. Dockman*, 389 N.W.29 254, 256 (Minn. Ct. App. 1986).

Mr. Nahal never filed a charge with the MCCR. (Nahal Dep. at 264:7–265:9.) The last event giving rise to a complaint, his termination, occurred in 2016. As three years have since passed, any complaint Mr. Nahal were to bring now would be untimely. MCRO Ch. 141.50(a) ("A complaint may only be filed if the matter complaint of occurred within the City of Minneapolis within one year prior to the filing of the complaint."). Accordingly, Mr. Nahal has not and cannot at this time exhaust his administrative remedies. Therefore, his MCRO claims are not properly before this Court, and must be dismissed.

## C.    Title VII Claims

Title VII of the Civil Rights Act of 1964 makes it unlawful for employers to discriminate on the basis of race, sex, color, national origin, or religion. 42 U.S.C.A. § 2000e-2(a). To survive summary judgment, the plaintiff must demonstrate either direct evidence of discrimination or create an inference of discrimination under the *McDonnell Douglass* framework. *See Griffith v. City of Des Moines*, 387 F.3d 733, 736 (8th Cir. 2004). "Direct evidence" does not refer to whether the evidence is circumstantial, but rather the "causal strength of the proof." *Id.* Here, Mr. Nahal does not have direct evidence of discrimination. Thus, the Court considers whether he has provided sufficient evidence to create an inference of discrimination using the *McDonnell Douglass* analysis.

The *McDonnell Douglas* framework provides a three-step analysis. First, the plaintiff must establish a prima facie case of discrimination by demonstrating four things: (1) that they were a member of a protected class; (2) that they were meeting their employer's legitimate job expectations; (3) that they suffered an adverse

employment action; and (4) that the adverse employment action occurred under circumstances giving rise to an inference of discrimination. *Darke v. Lurie Besikof Lapidus & Co., LLP*, 550 F. Supp. 2d 1032, 1042 (D. Minn. 2008) (citing *McDonnell Douglass Corp. v. Green*, 411 U.S. 792 (1973)). If the plaintiff succeeds in establishing a prima facie case of discrimination, the burden then shifts to the employer, who must provide a "legitimate nondiscriminatory explanation" for the alleged adverse action. *Id.* (citing *Elnashar v. Speedway SuperAmerica, LLC*, 484 F.3d 1046, 1055 (8th Cir. 2007). The burden then shifts back to the plaintiff, who must establish that the employer's explanation is pretextual. *Id.*

Mr. Nahal has failed to establish a prima facie case of discrimination with respect to his sexual orientation, national origin, and religion. Therefore, he cannot defeat summary judgment on those claims.

### 1.    Sexual Orientation

Allina first argues that Mr. Nahal has disclaimed his sexual orientation claim by stating in his deposition that he didn't say that sexual orientation was part of his amended complaint, and that he was not sure that anybody at work knew he was gay. (Nahal Dep. at 237:2–243:8) However, sexual orientation is listed as a reason for discrimination in Mr. Nahal's complaint, and Allina has cited nothing to support the idea that a *pro se* plaintiff can disclaim one of his claims during a deposition in this manner. Thus, the Court will consider the claim on the merits.

Mr. Nahal's sexual orientation claim must be dismissed on the merits because the Eighth Circuit has held that "Title VII does not prohibit discrimination against homosexuals." *Williamson v. A.G. Edwards & Sons, Inc.*, 876 F.2d 69, 70 (8th Cir. 1989) (per curiam). Although at least one other circuit has recently held that Title VII *does* prohibit discrimination on the basis of sexual orientation, *Hively v. Ivy Tech Cmty. Coll. Of Ind.*, 853 F.3d 339 (7th Cir. 2017) (en banc), and the Supreme Court recently heard argument in a case that will resolve a circuit split, this Court is bound by the decisions of the Eighth Circuit. *See Hood v. United States*, 342 F.3d 861, 864 (8th Cir. 2003) ("The District Court… is bound, as are we, to apply the precedent of this Circuit."). Therefore, because under Eighth Circuit precedent, Mr. Nahal's sexual orientation does not qualify him as a member of a protected class, he cannot establish a prima facie case of discrimination.

Even if the Eighth Circuit did recognize discrimination on the basis of sexual orientation, summary judgment would still be warranted on Mr. Nahal's sexual orientation claims. Mr. Nahal has failed to demonstrate that he could establish an inference of discrimination on this basis. This showing is a "flexible evidentiary standard," and a plaintiff can establish this inference "in a variety of ways." *Pye v. Nu Aire, Inc.*, 641 F.3d 1011, 1019 (8th Cir. 2011). For example, the plaintiff could show that similarly-situated employees who are not in the protected class were treated more favorably, or could demonstrate that biased comments were made by a decisionmaker. *Id.* Evidence that the employer "failed to follow its own policies" or "shifted its explanation of the employment decision" could demonstrate pretext that would also give rise to an inference of discrimination. *Young v. Builders Steel Co.*, 754 F.3d 573, 578 (8th Cir. 2014).

Here, Mr. Nahal has only alleged one instance in which his sexual orientation was implicated. He asserts that Mr. Nahas, his coworker and union steward, made an inappropriate comment regarding Mr. Nahal's sexual orientation two years before he was terminated. (Nahal Dep. 252:2–253:24; SAC ¶ 22.) Mr. Nahas has denied ever making that comment. (Clayton Decl. Ex. 1 at ¶ 5.) However, while this may be a genuine issue of fact, that fact is not material, because a single, isolated comment made by a non-decisionmaker two years before Mr. Nahal's termination cannot give rise to an inference of discrimination.

The Eighth Circuit carefully distinguishes "between comments which demonstrate a discriminatory animus in the decisional process…from stray remarks in the workplace, statements by nondecisionmakers, or statements by decisionmakers unrelated to the decisional process." *Mohr v. Dustrol, Inc.*, 306 F.3d 636, 640–41 (8th Cir. 2002). Even assuming that Mr. Nahas made the inappropriate comment attributed to him, it is too far removed from the termination decision-making process to demonstrate discriminatory motive. *See Brannum v. Missouri Dept. of Corrections*, 518 F.3d 542, 548 (8th Cir. 2008) ("offhand comments and isolated incidents (unless extremely serious) will not amount to [discrimination]." (quoting *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998))); *Simmons v. OCE-USA, Inc.*, 174 F.3d 913, 915 (8th Cir. 1999) (finding that an offensive remark made two years prior to adverse employment action was unrelated to the decision-making process). And Mr. Nahal has put forth no evidence to suggest a causal connection between Mr. Nahas's alleged offensive remark and Mr. Nahal's termination. Indeed, Mr. Nahas was not the

decisionmaker—Mr. Nahal's manager Matt Wolf was. (Nahal Dep. 236:16–18.) And there is no evidence in the record to support an inference that Mr. Wolf was motivated by Mr. Nahal's sexual orientation.

In sum, Mr. Nahal has not presented a genuine issue of material fact that could raise an inference of discrimination with respect to his sexual orientation. Thus, even if the Eighth Circuit recognized sexual orientation as a protected class under Title VII, his claim would fail.

## 2.    National Origin and Religion

Again, Allina argues that Mr. Nahal has disclaimed his religion claim by stating in his deposition that religious discrimination "never was" part of his amended complaint. (ECF No. 100 at 26 (citing Nahal Dep. at 255:25–256:1).) However, instead of relying on this purported waiver argument, the Court finds that Mr. Nahal cannot establish a prima facie case of discrimination based on either his national origin or religion.

There is no dispute here that Mr. Nahal is Iranian or that he is Muslim, and it is well-established that national origin and religion are both protected classes for the purposes of Title VII. Nor is it disputed that Mr. Nahal has suffered an adverse employment action, namely, his 2016 termination. However, Mr. Nahal has failed to provide evidence that a reasonable jury could find gives rise to an inference of discrimination. Indeed, Mr. Nahal's own submissions are nearly devoid of any specific allegation regarding discrimination based on national origin or religion.

The Court has carefully reviewed Mr. Nahal's submissions and found only one specific allegation that could fairly be interpreted as an allegation of discrimination based on national origin or religion. Mr. Nahal describes that several of his coworkers "turned…against him" after showing them a YouTube video concerning the political state of Iran, and he was unable to take a leave of absence after the death of his mother because of this.[3] (ECF No. 118-1, Ex. 15 at 2.) This does not rise to the level of evidence that would tend to show a genuine issue of material fact. It is, even in the Court's most liberal interpretation, a conclusory allegation, which is not sufficient to

---

[3] Mr. Nahal does not clearly connect the showing of this video with his inability to take a leave of absence; however, in interpreting his *pro se* submissions liberally, and resolving all inferences in his favor, the Court finds that his submissions could fairly be read this way.

preclude summary judgment. *See, e.g.*, *Nelson v. USAble Mutual Ins. Co.*, 918 F.3d 990, 994 (8th Cir. 2019) (holding that conclusory allegations of discrimination were not evidence sufficient to create a genuine issue of material fact); *Yon v. Principal Life Ins. Co.*, 605 F.3d 505, 510 (8th Cir. 2010) (finding that conclusory allegations in coworker affidavits did not "set forth additional facts in support of [plaintiff's] claim."). Even if Mr. Nahal had provided more specific evidence to establish adverse actions by his coworkers based on the fact that he showed them the video in question, this would not establish an inference of discrimination based on Mr. Nahal's Iranian nationality. Rather, at best, it would show an adverse reaction to Mr. Nahal's political beliefs, which are not protected by Title VII. *See* 42 U.S.C. § 2000e-2(a) (prohibiting discrimination based on race, color, religion, sex, or national origin); *see also Del Pilar Salgado v. Abbott Laboratories*, 520 F. Supp. 2d 279, 289–90 (D.P.R. 2007).

Though Mr. Nahal includes in his submissions many accusations of unfair treatment, he provides no evidence to support those allegations. And at the summary judgment phase, "accusations must surrender to evidence." *Onyiah v. Peiyi Zhao*, 16-cv-4111 (ECT/LIB), 2019 WL 4221347 at *3 (D. Minn. Sept. 5, 2019). Further, Mr. Nahal does not connect his national origin or religion to any of the alleged mistreatment or the adverse action he eventually suffered. Indeed, he stated in his deposition that his termination was not based on his national origin or religion. (Nahal Dep. 237:2–8.) Because Mr. Nahal has not provided sufficient evidence to demonstrate a genuine issue of material fact regarding discrimination based on national origin or religion, Allina is entitled to summary judgment on those claims.

### D.    Americans With Disabilities Act Claims

Finally, Allina seeks summary judgment on Mr. Nahal's ADA disability discrimination and retaliation claims. After careful review, the Court recommends granting summary judgment on these claims as well.

### 1.    2015 Request for Accommodation

First, Allina asserts that to the extent that Mr. Nahal's claims are based on a 2015 request for accommodation, those claims are time-barred. The Court agrees. In early 2015, Mr. Nahal provided Allina with a note from his physician, which stated "Mr. Nahal is treated for attention and concentration problems. Because of his attention and concentration problems, he is often late for appointments." (Clayton Decl. Exs. 21, 36.) This note formed part of the basis for Mr. Nahal's first charge of

discrimination against Allina, which he filed on July 23, 2015, and which was dismissed on July 28, 2015. After a dismissal of a claim by the Equal Employment Opportunity Commission, an aggrieved party has 90 days to file a civil action. 42 U.S.C.A. § 2000e-5(f)(1); *see also* 42 U.S.C.A. § 12117 (giving the Equal Employment Opportunity Commission the authority to hear cases under the ADA). This suit, filed in 2018, is far outside of that 90-day window. Thus, Mr. Nahal's claims regarding a failure to accommodate that occurred before July 28, 2015 are not properly before this Court.

## 2.    Failure to Accommodate

Mr. Nahal's remaining disability discrimination claims fail on the merits. The Eighth Circuit has adopted a "modified burden-shifting analysis" for determining failure-to-accommodate claims under the ADA. *Fenney v. Dakota Minn. & Eastern R.R. Co.*, 327 F.3d 707, 712 (8th Cir. 2003). First, a plaintiff must establish a "prima facie case of discrimination based on disability and a failure to accommodate it." *Schaffhauser v. United Parcel Serv., Inc.*, 794 F.3d 899, 905 (8th Cir. 2015). Then, the plaintiff must demonstrate that their requested accommodation is "reasonable on its face." *U.S. Airways, Inc. v. Barnett*, 535 U.S. 391, 401 (2002); *see also Peebles v. Potter*, 354 F.3d 761, 766 (8th Cir. 2004). The burden then shifts to the employer to demonstrate that the particular circumstances of the case would create an undue hardship for it. *Peebles*, 354 F.3d at 768.

Additionally, the Eighth Circuit recognizes that employees and employers share the responsibility to resolve accommodation requests through an "interactive process." *Peyton v. Fred's Stores of Ark., Inc.*, 561 F.3d 900, 902 (8th Cir. 2009). In order to demonstrate that an employer did not engage in this interactive process, a plaintiff must show:

> 1) the employer knew about the employee's disability; 2) the employee requested accommodations or assistance for his or her disability; 3) the employer did not make a good faith effort to assist the employee in seeking accommodations; and 4) the employee could have been reasonably accommodated but for the employer's lack of good faith.

*Id.* (quotation omitted). A failure by the employer to engage in the interactive process is "prima facie evidence that the employer may be acting in bad faith." *Fjellestad v. Pizza Hut of Am., Inc.*, 188 F.3d 944, 952 (8th Cir. 1999). This evidence of bad faith

defeats summary judgment, because it creates a factual question as to whether an attempt to provide reasonable accommodation was made. *Id.*

Here, Mr. Nahal has not provided sufficient evidence to defeat summary judgment on his failure to accommodate claim. The Court finds that he has not established a prima facie case of discrimination based on disability, and that even if he had done so, he cannot demonstrate that his requested accommodation was reasonable on its face. Nor has Mr. Nahal established that Allina was acting in bad faith during the interactive process.

### a.      Prima Facie Case of Disability Discrimination

To establish a prima facie case of disability discrimination, a plaintiff must show that: (1) they suffer from a disability that substantially limits a major life activity; (2) they are qualified to perform the essential functions of the job, with or without accommodation; and (3) they have suffered an adverse employment action because of the disability. *E.g.*, *Benson v. Northwest Airlines, Inc.*, 62 F.3d 1108, 1111–12 (8th Cir. 1997). Allina does not dispute that Mr. Nahal suffers from ADHD, and indeed the record includes notes from doctors who have treated Mr. Nahal that substantiate this. There could potentially be a genuine issue of material fact regarding whether Mr. Nahal was qualified to perform the essential functions of his job, though neither Allina nor Mr. Nahal devote resources to discussing this element of disability discrimination. The Court finds that it need not delve deeper into it, however, because it is clear that Mr. Nahal has not established a genuine issue of material fact regarding whether he suffered an adverse employment action due to his disability, and therefore he cannot defeat summary judgment on this claim.

Though Mr. Nahal accuses Allina of terminating him based on disability discrimination, he has provided no evidence to support those accusations. At the summary judgment stage, accusations are simply not enough. *See, e.g.*, *Nelson v. USAble Mutual Ins. Co.*, 918 F.3d 990, 994 (8th Cir. 2019) (holding that conclusory allegations of discrimination were not evidence sufficient to create a genuine issue of material fact); *Onyiah v. Peiyi Zhao*, 16-cv-4111 (ECT/LIB), 2019 WL 4221347 at *3 (D. Minn. Sept. 5, 2019) ("accusations must surrender to evidence."). Indeed, Mr. Nahal has admitted that he was warned that refusing to meet with his supervisor to discuss ongoing issues with attendance and tardiness would result in termination for insubordination, and that that was what he was terminated for. (Nahal Dep. 233:10–

19, 235:6–10.)  Simply, there is no evidence before the Court to suggest that Mr. Nahal was discharged because of his disability.

    **b.**    **Accommodation**

Even if Mr. Nahal were able to establish a prima facie case of disability discrimination, he cannot prevail on his failure to accommodate claim.  There is no evidence in the record to establish that his requested accommodation for his ADHD was required or that it was "reasonable on the face."

First, the Court notes that Mr. Nahal has not presented evidence that an accommodation was even necessary.  In fact, the only evidence in the record from Mr. Nahal's physician regarding work-related restrictions suggests that an accommodation was unnecessary.  (Clayton Decl. Ex. 36 at AHS000582 (physician letter stating, "there are currently no limitations or restrictions to [Mr. Nahal's] workability.").)  Once again, though Mr. Nahal presents assertions to rebut this, he provides nothing to support those conclusions.  Without documentation indicating Mr. Nahal's need for workplace accommodations, Allina had no duty to provide the requested accommodation.  *Bey v. Brooklyn Ctr. Hotel, Ltd.*, No. CIV. 00-458 DWF/AJB, 2001 WL 567825 at *4 (D. Minn. May 23, 2001) (granting summary judgment where plaintiff did not provide medical documentation to support his claim of disability and need for accommodation).

If Mr. Nahal had been able to establish his need for accommodation, he would then need to demonstrate that his requested accommodation was reasonable.  *Peebles*, 354 F.3d at 766.  Establishing the reasonableness of the accommodation is also required to demonstrate that Allina failed to participate in the interactive process.  *E.g.*, *Hill v. Walker*, 737 F.3d 1209, 1218 (8th Cir. 2013).  Mr. Nahal must show that a "reasonable accommodation is possible, and that the accommodation will allow [him] to perform the essential functions of the job."  *Kallail v. Alliant Energy Corp. Servs. Inc.*, 691 F.3d 925, 932 (8th Cir. 2012).  In order to work with his ADHD, Mr. Nahal requested that he must always allowed to be late, by an undefined amount of time, regardless of his assigned start time or a required meeting time.  This is not, as a matter of law, a reasonable accommodation, because it directly interferes with the essential functions of Mr. Nahal's job.

"Essential functions of a position are the fundamental duties of the job…."  *Kallail*, 691 F.3d at 930 (citing *Canny v. Dr. Pepper/Seven-Up Bottling Grp., Inc.*, 439 F.3d

894, 900 (8th Cir. 2006)).  In the job description provided by Allina to Mr. Nahal, some of the major responsibilities of his job are that he be "punctual and dependable," and that he attend work as scheduled and comply with Allina's guidelines regarding tardiness.  The Eighth Circuit has previously recognized that "regular attendance at work is an essential function of employment." *Brannon v. Luco Mop Co.*, 521 F.3d 843, 849 (8th Cir. 2008).  And other circuits have recognized that an accommodation permitting an employee to be habitually tardy is not reasonable, because it interferes with the essential functions of a job. *E.g.*, *Taylor-Novotny v. Health Alliance Medical Plans, Inc.*, 772 F.3d 478 (7th Cir. 2014) (affirming summary judgment in favor of employer where the plaintiff had requested an accommodation allowing her to regularly be late); *Earl v. Mervyns, Inc.*, 207 F.3d 1361, 1367 (11th Cir. 2001) (finding that a request to arrive at work at any time was not a request for a reasonable accommodation, and that the employer had no duty to engage in the interactive process regarding it).  In sum, Allina did not need to provide Mr. Nahal with his requested accommodation because it was not medically documented as necessary, and because it was unreasonable due to its interference with an essential job function (timeliness).  Thus, Mr. Nahal's failure to accommodate claim cannot survive summary judgment.

### 3.  Retaliation

Finally, Mr. Nahal claims his termination was done as retaliation for his requests for accommodation.  However, there is no evidence in the record to support this contention, and strong evidence in the record to rebut it.[4]  Therefore, the Court concludes that this claim, too, cannot survive summary judgment.

The evidence in the record demonstrates that towards the end of his employment, Mr. Nahal's relationship with his manager had soured.  In February 2016, his manager scheduled a meeting with Mr. Nahal to discuss concerns over

---

[4] Allina argues in the alternative that Mr. Nahal is estopped from bringing this contention because in an earlier union arbitration, the arbitrator specifically found that Mr. Nahal's termination was not retaliatory.  However, the Court is mindful of authority from this district that suggests that arbitration decisions that do not favor the employee cannot have a preclusive effect on later litigation.  *See, e.g.*, *Dillaway v. Ferrante*, No. CIV 02-715 (JRT/JSM), 2003 WL 23109696 at *7 (D. Minn. Dec. 9, 2003).  Because the outcome is the same regardless of the path that the Court takes, it will not engage with the estoppel argument.

ongoing attendance and tardiness issues. (Nahal Dep. 233:4–10; Clayton Decl. Ex. 25; Wolf Decl. ¶ 7.) However, Mr. Nahal refused to attend this meeting. (Wolf Decl. ¶ 7.) His manager repeatedly attempted to convince Mr. Nahal to attend, and warned him that if he refused, his actions would be considered insubordination, a basis for termination. (*Id.*) Despite these efforts and warnings, Mr. Nahal still refused to meet. (*Id.*) Allina then terminated Mr. Nahal's employment because of this insubordination. (Nahal Dep. at 235:6–10; Wolf Decl. ¶ 8.)

Mr. Nahal has provided no evidence to create a genuine issue of material fact regarding the circumstances of his termination. Indeed, he has admitted that he knew his actions could lead to a charge of insubordination and termination, and that this is what Allina terminated him for. (Nahal Dep. 233:10–19, 235:6–10.) Instead, Mr. Nahal relies on bare accusations and conclusory allegations, which as the Court has already discussed, cannot defeat summary judgment. Thus, summary judgment in favor of Allina on his retaliation claims is warranted.

## III.   Recommendation

In sum, for the reasons set forth above, the Court concludes that Mr. Nahal has not demonstrated a genuine issue of material fact regarding any of his claims, and Allina is entitled to summary judgment.

Accordingly, the Court makes the following recommendations:

1.   Allina's Motion for Summary Judgment (ECF No. 98) be GRANTED; and

2.   This action should be DISMISSED WITH PREJUDICE.


Date: November 18, 2019                     *s/ Katherine Menendez*
                                                      Katherine Menendez
                                                      United States Magistrate Judge

## NOTICE

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14

days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set for in LR 72.2(c).

**Under Advisement Date:** This Report and Recommendation will be considered under advisement 14 days from the date of its filing. If timely objections are filed, this Report and Recommendation will be considered under advisement from the earlier of: (1) 14 days after the objections are filed; or (2) from the date a timely response is filed.